## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 26-60646-CIV-DAMIAN

JOHN D. EULIANO, as Trustee of the John
D. Euliano Revocable Trust UTD 5-27-14,
BREVARD NURSING ACADEMY, LLC
D/B/A COASTAL TECHNICAL
INSTITUTE, COLE BRANTLEY, and CGB
LOIS T, LLC, individually, and on behalf of
all others similarly situated,

        Plaintiffs,

    v.

ALSTON & BIRD LLP,

        Defendant.

_____/

### DEFENDANT ALSTON & BIRD LLP'S MOTION TO DISMISS

Defendant Alston & Bird LLP (the "Firm") moves to dismiss the Complaint [ECF No. 1] with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### INTRODUCTION

Plaintiffs were never clients of Alston & Bird. They bring a malpractice claim that does not allege that any Plaintiff ever engaged the Firm, spoke with the Firm, emailed the Firm, met with the Firm, or sought the Firm's advice in any way. Plaintiffs do not allege the existence of any engagement letter, retainer, or direct relationship with the Firm. Indeed, the word "client" appears only once in the Complaint, and not to describe Plaintiffs' relationship with the Firm. In short, the most essential element of a legal malpractice claim – privity between an attorney and a *client* – is absent from the Complaint.

Because no attorney-client relationship exists, Plaintiffs attempt to stretch their status as investors in Goliath Ventures – a cryptocurrency firm that allegedly defrauded them through a Ponzi scheme – into an attorney-client relationship.  According to Plaintiffs, Goliath's engagement of the Firm "immediately" created "legal and fiduciary duties" to Plaintiffs and an undefined number of class members because of their status as investors in Goliath's fund.  No authority supports such a massive expansion of the attorney-client relationship.  Plaintiffs' theory conflicts with Florida's strict privity rule for malpractice actions, which no court has extended to a relationship like this one.  More broadly, adopting Plaintiffs' premise would undermine the foundation of the attorney-client relationship by imposing fiduciary duties on lawyers as to every partner, shareholder, and contractual counterparty of each of their clients.

The Complaint also fails to plead any of its claims with particularity.  All three counts sound in fraud, alleging that the Firm enabled Goliath's Ponzi scheme.  But Plaintiffs make no attempt to satisfy Rule 9(b)'s requirement to identify the who, what, where, when, and why of their allegations of an attorney-client relationship, a duty owed by the Firm, or the Firm's alleged misrepresentations and omissions.  They mention two alleged documents – an "opinion letter" and a form joint venture agreement – that are not attached to the Complaint, are never quoted, and are never described by date or any other specific identifying information.  Plaintiffs never allege who saw these documents, when, what they say, or how Plaintiffs relied on them.  There are no allegations about any individual Plaintiff at all, or any indication that any of the named Plaintiffs knew that the Firm was performing legal work for Goliath.  Rule 9 requires more.

Plaintiffs allege they are victims of a scam.  Goliath's CEO was arrested, and the entity he led is now in bankruptcy.[1]  Rather than redressing their injuries in the bankruptcy case – the only

---

[1] *See In re Goliath Ventures Inc.*, No. 26-BK-13174 (Bankr. S.D. Fla. 2026).

appropriate venue – Plaintiffs chose to file suit in this Court against a law firm they do not allege participated in or even knew about the fraud.  Although a bankruptcy proceeding may not be a preferred path for Plaintiffs, that does not justify filing a legal malpractice case that is missing its most basic element: an attorney-client relationship between Plaintiffs and the Firm.  Attorneys are not responsible for their clients' misconduct, and they do not owe fiduciary duties to non-clients.  Plaintiffs' attempt to make the Firm a guarantor of their investment losses falls far short of federal pleading standards.  The Court should dismiss the Complaint in its entirety with prejudice.

## BACKGROUND

Plaintiffs' claims arise from a cryptocurrency Ponzi scheme orchestrated by Goliath Ventures, Inc. and its principals, including CEO Christopher Delgado.  *See* Compl. ¶ 1.  Delgado allegedly operated a Ponzi scheme targeting Plaintiffs from 2023 until he was arrested in January 2026.  *Id.* ¶¶ 3, 20.  Sometime during that two-year period, Plaintiffs signed up as investors with Goliath "through joint venture agreements drafted before Alston & Bird's involvement."  *Id.* ¶ 3.  According to Plaintiffs, the Firm was, at some unidentified point in 2025, "hired by Delgado" to "redo" the joint venture agreements.  *Id.*  Without further explanation, Plaintiffs assert that the Firm thus "inherited a joint venture with hundreds, if not thousands of joint venture 'Partners', to whom it *immediately* owed legal and fiduciary duties."  *Id.*  (emphasis added).

Plaintiffs allege that the Firm structured Goliath's joint venture enterprise, "engineered" its legal architecture, and "issued legal assurances intended to induce reliance by investors and custodial institutions."  *Id.* ¶ 4.  The alleged "engineer[ing]" and "structur[ing]" the Firm did was to draft a form joint venture agreement ("JVA") and "related transactional documents."  *Id.* ¶ 87.  Yet Plaintiffs do not allege with particularity (or at all) who made the "legal assurances," when they were made, to whom they were made, where they were made, or to which Plaintiff (if any)

they were directed.  The Complaint references an "opinion letter," but does not quote from the letter at all, and its descriptions of the letter's supposed contents are largely made "upon information and belief."  *Id.* ¶¶ 26–27, 34.  Not one of the named Plaintiffs alleges that he or she saw any of the documents they claim form the basis for an attorney-client relationship.

Plaintiffs acknowledge that Goliath was the Firm's "client."  *Id.* ¶¶ 3, 25, 88.  They do not, however, allege any privity between themselves and the Firm.  Nor do they allege any communication with the Firm, any request for legal advice, or even that any Plaintiff knew that the Firm existed.  They do not allege that the Firm was a partner or participant in their alleged joint venture.  The Complaint does not attach the alleged joint venture agreement and never quotes from any of its provisions, and some of the Complaint's allegations about it are contradictory.  For example, Plaintiffs allege that the Firm owes them fiduciary duties because they are "Partners" under the joint venture agreement, while simultaneously alleging that those agreements "conferred no meaningful managerial control."  *Id.* ¶¶ 3, 33–34.  They also assert that their status as "joint venturers" or "partners" did not change the fact that they were nothing more than "passive investors," but contend the joint venture agreements still "trigger[ed] a duty owed by Alston & Bird to the partners or joint venturers in the joint venture the Firm created and represented."  *Id.* ¶ 33–34.  Later, the Complaint alleges that the agreements were not, in fact, joint venture agreements, but "an investment program" that "in economic substance, constituted the offer and sale of securities" and that "*mischaracterized* passive investors as 'partners.'"  *Id.* ¶ 96(a)–(b) (emphasis added).

Despite these contradictions, Plaintiffs claim that, by investing in Goliath's Ponzi scheme, they became "Partners" of Goliath to whom "Goliath's lawyer, Alston & Bird would fulfill the duties owed to a partnership."  *Id.* ¶ 34.  That is the basis for their allegation that the Firm owed

AMERICAS 133195986                                      4

them a fiduciary duty.  *See id.* ¶ 43 ("To the extent the structure created a partnership or joint venture under applicable law, the duties owed by counsel to the joint venture enterprise extended to its partners.").  Plaintiffs allege that the Firm breached that supposed duty by failing to disclose material (and undefined) conflicts of interest, "document[ing] the legal framework," issuing "improper legal opinions," and providing legal advice to "circumvent securities protections."  *Id.* ¶¶ 44–46, 110.  The Complaint does not allege what conflicts of interest occurred, when they occurred, or how they were handled.  Despite accusing the Firm of giving "improper legal opinions" and providing legal advice to "circumvent securities protections," the Complaint never identifies what advice the Firm provided, when it was given, to whom, and who relied on it.

Plaintiffs allege that they relied on the Firm's legal work when they were *prospective* investors "deciding to invest in the joint venture enterprise."  *Id.* ¶ 135; *see id.* ¶ 89 ("Defendant knew, or reasonably should have known, that prospective investors . . . would rely upon Defendant's legal work in evaluating the legitimacy and regulatory compliance of the Goliath investment program.").  Those allegations also lack particularity, and Plaintiffs do not allege any detrimental reliance after they became "Partners" in the joint venture.

Plaintiffs bring three claims on behalf of themselves and a putative class: legal malpractice, breach of fiduciary duty, and constructive fraud.  All fail for the reasons explained below.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept legal conclusions or conclusory allegations. *Id.* at 680–82.

In alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Whether a plaintiff 'alleg[es] fraud' under Rule 9(b) depends on the factual allegations underlying a plaintiff's claim – not how the plaintiff styles his claim." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025) (explaining that Rule 9(b) applies to any claim that "sounds in fraud"). Even a non-fraud claim "must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim, as alleged elsewhere in the complaint." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006). Because all three counts here sound in fraud, Rule 9(b) "requires the plaintiff to allege 'the who, what, when[,] where, and how' of the fraudulent conduct" for each count. *Pop*, 145 F.4th at 1296 (citation omitted). The plaintiff thus must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Id.* (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)).

## ARGUMENT

The Complaint falls far short of stating a plausible claim because (I) the failure to allege privity between Plaintiffs and the Firm is fatal to all three counts; and (II) each of Plaintiffs' claims sounds in fraud but none states the circumstances of the alleged fraud with particularity.

## I. PLAINTIFFS' CLAIMS FAIL BECAUSE THEY DO NOT PLAUSIBLY ALLEGE PRIVITY WITH THE FIRM

"An attorney's liability for negligence in the performance of his or her professional duties is limited to clients with whom the attorney shares privity of contract." *Espinosa v. Sparber,*

*Shevin, Shapo, Rosen & Heilbronner*, 612 So. 2d 1378, 1379 (Fla. 1993). The same goes for a breach of fiduciary duty claim founded in professional malpractice, as "the accepted general rule is that attorneys do not owe a fiduciary duty to a non-client." *Tambourine Comercio Int'l S.A. v. Solowsky*, No. 06-20682-Civ-LENARD/TORRES, 2007 U.S. Dist. LEXIS 113549, at *11 (S.D. Fla. May 15, 2007) (noting that "no Florida court has found that any such duties are enforceable through a civil action by third parties who have no attorney-client relationship"). Plaintiffs' constructive fraud claim likewise fails, since it is based on the "abuse[]" of "a confidential or fiduciary relationship," and no such relationship exists here. *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003).

The only recognized exception to this strict privity requirement is where the plaintiff is "an intended third-party beneficiary." *Espinosa*, 612 So. 2d at 1380. As explained below, all three counts of the Complaint fail because Plaintiffs do not plausibly allege: (A) facts supporting the existence of any legal duty owed to them by the Firm; or (B) that they were intended third-party beneficiaries of Goliath's client relationship with the Firm.

### A.  PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THE FIRM OWES THEM ANY LEGAL DUTY

The Complaint does not allege any direct legal duty from the Firm to Plaintiffs.[2] To the contrary, Plaintiffs admit that they did not hire the Firm. Compl. ¶¶ 3, 25, 88. Instead, the Complaint alleges that the Firm "owed legal and fiduciary duties" to all the "Partners" of Goliath's joint ventures. *Id.* ¶¶ 3, 33. But under Florida law, an attorney does not owe duties to third parties merely because they are linked to his client. Courts have repeatedly rejected Plaintiffs' theory, whether in the context of a partnership, a limited-liability company, a closely held corporation, or

---

[2] The Complaint alleges that the Firm had various duties but does not allege a basis for extending those duties to Plaintiffs, who are not clients of the Firm. *See* Compl. ¶¶ 95-96.

a public corporation. *See Mengle v. Goldsmith*, No. 2:09–CV–46–FtM–29SPC, 2011 WL 1058852, at *6 (M.D. Fla. Mar. 21, 2011) ("[R]epresenting an entity does not establish an attorney-client relationship with members of the entity, or vice versa.").

For example, in the context of a limited liability company, a court in this district held that there was "no legal support for the proposition that being a member of an LLC entitles one to sue the LLCs' lawyer without privity of contract as a third-party beneficiary." *Ofer v. Roher*, No. 24-cv-22349-BLOOM/Elfenbein, 2024 U.S. Dist. LEXIS 225503, at *11–12 (S.D. Fla. Oct. 28, 2024) (dismissing complaint because attorney "owed a fiduciary duty to the LLCs and not to Plaintiff"); *see also Razin v. A Milestone, LLC*, 67 So. 3d 391, 397 n.4 (Fla. 2d DCA 2011) (noting that attorney hired to represent an LLC "had no duty" to its individual members). The same goes for a professional association formed under chapter 621, Florida Statutes. *See Rudolf v. Gray, Harris & Robinson, P.A.*, 901 So. 2d 148, 150 (Fla. 5th DCA 2005) (attorney "did not owe the appellants, as individual shareholders, any duty separate and apart from that owed to" professional association of doctors). The analysis rejecting such duties in the context of an LLC or a professional association applies with equal force to a partnership. *See, e.g.*, *Est. of Ginor v. Landsberg*, 960 F. Supp. 661, 667 (S.D.N.Y. 1996) ("As attorney for the Partnership and the general partner, [defendant's] fiduciary duties ran only to those entities," not the limited partner).

Corporations are no different. An "attorney who represents a corporation is 'not in privity with and therefore owes no separate duty of diligence and care to an individual shareholder absent special circumstances or an agreement to also represent the shareholder individually.'" *Salit v. Ruden*, 742 So. 2d 381, 389 (Fla. 4th DCA 1999) (quoting *Brennan v. Ruffner*, 640 So.2d 143, 146 (Fla. 4th DCA 1994)) (affirming dismissal of legal malpractice claim because there was "no allegation that the law firm represented any of the appellants individually"). That is true even for

a "closely held corporation" – the attorney "is not in privity with and therefore owes no separate duty of diligence and care to an individual shareholder absent special circumstances or an agreement to also represent the shareholder individually." *Brennan*, 640 So. 2d at 145–46. No duty exists, "even though legal advice rendered to the corporation may affect the shareholders." *Id.* at 146.

Here, the alleged connection is even more attenuated. Plaintiffs allege only that the Firm was retained by Goliath, not by the joint venture itself or by Plaintiffs. No authority extends an attorney's duties from a client to the client's joint venture and then to every partner in that venture. Because Plaintiffs did not hire the Firm, they were not its clients and "thus lacked the requisite privity customarily required to maintain an action sounding in negligence against an attorney." *Angel, Cohen & Rogovin v. Oberon Inv., N.V.*, 512 So. 2d 192, 194 (Fla. 1987). Dismissal is therefore required. *See Ofer*, 2024 U.S. Dist. LEXIS 225503, at *12 (dismissing legal malpractice and breach of fiduciary duty claims brought by LLC member); *Mengle*, 2011 WL 1058852, at *7 (M.D. Fla. Mar. 21, 2011) (dismissing real estate investors' claims against a law firm, which represented the promoter for the real estate projects, because of a failure to plead attorney-client relationship); *Iowa Nat'l Mut. Ins. Co. v. Worthy*, 447 So. 2d 998, 1002 (Fla. 5th DCA 1984) ("We approve the trial court's dismissal of the insured's count alleging constructive fraud since in the context of this case there was no fiduciary relationship between the insurer and its insured.").

### B. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT THEY ARE INTENDED THIRD-PARTY BENEFICIARIES OF THE FIRM'S RELATIONSHIP WITH GOLIATH

In the alternative, Plaintiffs allege in a conclusory fashion that they are "intended beneficiaries of [the Firm's] legal services." Compl. ¶ 93.[3] "A party is an intended beneficiary

---

[3] As explained in more detail in Section II below, the conclusory nature of Plaintiffs' third-party beneficiary allegations is an independent justification for dismissal. *See Horowitz v. Laske*, 855 So. 2d 169, 173 (Fla. 5th DCA 2003) ("Wendt alleges that he was among the 'class' of those

only if the parties clearly express, or the contract itself expresses, an intent to *primarily and directly* benefit the third party or a class of persons to which that party claims to belong." *Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So. 2d 399, 400 (Fla. 2d DCA 2000) (emphasis added) (affirming dismissal of malpractice complaint for lack of privity). Plaintiffs must allege that "*both* contracting parties intended to benefit the third party," *id.* (emphasis added), but they do not allege any statement by either Goliath or the Firm expressing such intent. Nor do they attach or identify any contract, engagement letter, or other similar document that evidences such intent. *K.R. Exch. Servs., Inc. v. Fuerst, Humphrey, Ittleman, PL*, 48 So. 3d 889, 895 (Fla. 3d DCA 2010) (affirming dismissal of malpractice claim because engagement agreement "does not show an intent to directly and primarily benefit" a third party).

For good reason, the exception to the privity requirement for third-party beneficiaries is "limited." *Angel, Cohen & Rogovin*, 512 So. 2d at 194; *Brennan*, 640 So. 2d at 146 ("Florida has extended the third party beneficiary exception to the privity requirement in legal malpractice actions to very limited instances, mainly in the area of will drafting."). In the drafting of a will, the third-party "beneficiary" of the legal work is expressly identified. Here, by contrast, Plaintiffs are investors and counterparties to another party that retained its own counsel. While they allege reliance on a purported opinion letter, their own Complaint admits that the supposed letter and unspecified other advice were issued to Goliath, not the public. *See* Compl. ¶ 5. That precludes the existence of a fiduciary duty to Plaintiffs. *See In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558, 1563 (S.D. Fla. 1993) (law firm did not owe investors a fiduciary duty where the firm "never issued legal opinions to the general public but only to their client").

---

intended to benefit from Horowitz's advice. However, that is a legal conclusion devoid of ultimate facts supporting it.").

The opinion in *In re Cascade* confirms the flaws in Plaintiffs' theory. There, the plaintiffs alleged that the law firm helped prepare "fraudulent filings with the SEC" as well as drafting "letters to shareholders and press releases which stated erroneous facts." *Id.* That was not enough to "demonstrate any kind of fiduciary relationship between the defendant law firms and Plaintiffs," particularly where "the law firms represented *Cascade*, not any third party." *Id.* at 1564. As the court explained, the law firms "did not have [a] duty to investigate their client" and should not be "charged with a duty to the public at large to 'tattle' on their clients." *Id.* The same is true here: Plaintiffs challenge the Firm's work for its actual client, Goliath, but they allege no fiduciary relationship with the Firm, no engagement, no privity, and no duty owed to them as outside investors to disclose whatever "red flags" might have been present.

Plaintiffs' third-party beneficiary theory is also defeated by their allegations of "conflicts of interest" between the Firm's representation of Goliath and its supposed duties to them. *See* Compl. ¶¶ 8, 28, 44, 117. Such allegations "expressly undercut[] a third-party beneficiary claim." *Brennan*, 640 So. 2d at 146; *Angel, Cohen & Rogovin*, 512 So. 2d at 194 ("Respondent's assertion that the petitioner knew or should have known of potential conflict between the interests of [the client] and the respondent further undercuts his reliance on the third-party beneficiary exception."); *Silver Dunes Condo. of Destin, Inc. v. Beggs & Lane*, 763 So. 2d 1274, 1277 (Fla. 1st DCA 2000) ("Evidence of a conflict of interest between the rights of the claimed third-party beneficiary and the rights of the attorney's actual client undercuts any claim that the legal services were undertaken for the express benefit of the claimed third-party beneficiary.").

Finally, Plaintiffs' third-party beneficiary theory also fails because the Complaint does not plausibly allege they were the "primary" beneficiaries of the Firm's legal work. At most, Plaintiffs merely allege that the legal work the Firm performed, including the joint venture agreements and

the alleged opinion letter, provided information and advice to Goliath that Plaintiffs could also rely on. The "incidental" benefit to Plaintiffs does not change that the Firm's legal work was *primarily* for Goliath's benefit, not theirs. *Angel, Cohen & Rogovin*, 512 So. 2d at 194 ("Florida courts have refused to expand this exception to include incidental third-party beneficiaries."); *Hitchcock v. USAA Cas. Ins. Co.*, No. 6:18-cv-1986-Orl-28TBS, 2019 U.S. Dist. LEXIS 26902, at \*8 (M.D. Fla. Feb. 20, 2019) (dismissing malpractice claim with prejudice where the plaintiff "might have been an incidental third-party beneficiary," but the firm's primary duty was to its client).

Because Plaintiffs allege neither privity of contract nor that they were the intended third-party beneficiary of Goliath's relationship with the Firm, the Court should dismiss the Complaint.[4] *Hunt Ridge at Tall Pines, Inc.*, 766 So. 2d at 400 (affirming dismissal of malpractice complaint and noting that, "if the parties are not in privity, the plaintiff must be an intended third-party beneficiary of the lawyer's services").

## II.     PLAINTIFFS FAIL TO ALLEGE FRAUD WITH PARTICULARITY

"[S]o long as a claim 'sounds in fraud' based on the allegations underlying the claim, Rule 9(b)'s particularity requirement applies." *Pop,* 145 F.4th at 1293 ("That the plaintiff does not call his claim 'fraud' is not dispositive.") (cleaned up). Courts have "consistently found that Rule 9(b) is also applicable to torts that are not even necessarily fraudulent – such as a breach of fiduciary duty claim – as long as their underlying factual allegations include averments of fraud." *Cutler v. Voya Fin., Inc.*, No. 18-20723-Civ-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 7812 (S.D. Fla. Jan. 15, 2019) (collecting cases).

---

[4] The Complaint includes a single mention – without elaboration – of an "invited-reliance doctrine." Compl. ¶ 113. That is not a recognized exception to Florida's strict rule of privity for malpractice-related claims. *See Hunt Ridge at Tall Pines, Inc.*, 766 So. 2d at 401.

All three of Plaintiffs' claims sound in fraud, as the Complaint's opening paragraphs make clear. Plaintiffs allege that Goliath and Delgado "orchestrated" a "massive cryptocurrency Ponzi scheme" that defrauded hundreds to thousands of investors and that "Goliath could not have gotten away with this massive fraud without the help of its law firm, Alston & Bird." Compl. ¶¶ 1–3. The remaining general allegations – which are incorporated into the counts – assert that Delgado and Goliath defrauded investors through two related "scams" that "could not have happened" without the Firm's legal work. *Id.* ¶ 7. The class allegations seek certification of an undefined class of investors based on their investment in two of Goliath's "scams." *Id.* ¶ 49.

Because Plaintiffs' claims all allege that the Firm facilitated Goliath's fraud, all three counts must satisfy Rule 9(b)'s heightened pleading requirements. *See Toyo Tire Holdings of Ams. Inc. v. Ameri & Partners, Inc.*, No. 8:23-cv-01300-FWS-DFM, 2024 U.S. Dist. LEXIS 75204, at *20 (C.D. Cal. Mar. 13, 2024) (dismissing professional negligence and fraud claims under Rule 9(b) because they were based on "a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of the claims") (cleaned up). But as shown below, all three counts fail to allege with any particularity the *who, what, when, where, and why* of Plaintiffs' allegations regarding: (A) privity and any legal relationship or duty owed by the Firm; and (B) the work the Firm allegedly performed and any purported material misrepresentations or omissions.

### A. THE COMPLAINT LACKS PARTICULARITY AS TO ALLEGATIONS OF PRIVITY, THE PARTIES' LEGAL RELATIONSHIP, AND THE FIRM'S ALLEGED DUTY

Plaintiffs' allegations of a legal relationship between Goliath and the Firm are pure speculation. The Complaint highlights this flaw at the outset by conceding that *Goliath*, not Plaintiffs, retained the Firm to revise joint venture agreements. Compl. ¶ 3. Plaintiffs do not allege who signed the engagement agreement, when it was signed, or even whether one exists. They speculate that "Delgado retained [the Firm] to structure the enterprise and provide legal cover for

the planned capital raise," Compl. ¶ 25, but do not explain what the capital raise was or how it relates to their claims.  The Complaint includes a general allegation that the Firm "was retained" to perform certain work "in connection with the formation and operation of the Goliath investment program," Compl. ¶¶ 3, 87, but does not specify what the work was, when that work was done, who did it, whether any individual Plaintiff ever knew it was done or saw the work, or any fact that might show that the Firm knew it had a relationship or duty to Plaintiffs.  Such allegations that "do[] little more than allege that the professional defendants were retained for their services" are insufficient to satisfy Rule 9(b).  *Ahmed v. Trupin*, 809 F. Supp. 1100, 1109 (S.D.N.Y. 1993) (holding that plaintiff must allege "a more precise connection to, or role in preparation of, the [offering] memorandum"); *see also Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1265– 66 (M.D. Fla. 2018) (dismissing fraud claims where plaintiff attributed fraudulent representations to "BOA employees" without specifying the individuals responsible).

Plaintiffs also fail to supply the required particularity for their alternative theories of duty. Counts 1 and 2 allege that the Firm assumed duties to investor-plaintiffs under the intended third-party beneficiary doctrine or the "invited-reliance doctrine."  Compl. ¶¶ 93, 113.  But Plaintiffs do not plead any fact showing that either the Firm or Goliath intended for Plaintiffs to benefit from the legal work performed.  There is no allegation of any act by or communication from the Firm directed at investors, any communication the Firm made or authorized for public circulation, or any investor who received and acted on any communication.

Plaintiffs further fail to adequately plead the existence of any confidential relationship beyond the "foreseeable reliance of investors" on the Firm's legal work.  *Id.* ¶ 137.  But "[t]he fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part

of the other party." *Rusty115 Corp. v. Bank of Am., N.A.*, NO. 22-CV-22541-BER, 2023 U.S. Dist. LEXIS 165584, at *12–13 (S.D. Fla. Sept. 18, 2023) (citation omitted); *see also Bedford Materials Co. v. Armorstruxx*, No. 20-80793-CIV-SINGHAL, 2021 U.S. Dist. LEXIS 235411, at *15 (S.D. Fla. Mar. 5, 2021) ("A constructive fraud claim will not lie without acceptance or undertaking of a fiduciary duty by the defendants.").

Because Plaintiffs do not plead the existence of a legal duty with any particularity, Rule 9(b) requires dismissal.  *See, e.g.*, *Solidda Grp., S.A. v. Sharp Elecs. Corp.*, No. 12-21411-CIV-DIMITROULEAS/S, 2012 U.S. Dist. LEXIS 198726, at *24 (S.D. Fla. Sept. 27, 2012) (dismissing complaint because the "allegation that one breached a fiduciary duty by committing fraudulent acts also must be pled with particularity"); *Regan v. Bank of Am., N.A.*, No. 23-80700-CIV-CANNON/Reinhart, 2023 U.S. Dist. LEXIS 173505, at *11–12 (S.D. Fla. Sept. 27, 2023) (dismissing a constructive fraud claim as a matter of law and for failure to satisfy Rule 9(b), where there was no confidential or fiduciary relationship between the plaintiff and defendant).

**B.  PLAINTIFFS FAIL TO PLEAD WITH PARTICULARITY THE WORK THAT THE FIRM PERFORMED OR HOW THE FIRM PERFORMED THAT WORK IMPROPERLY**

All three claims depend on allegations that the Firm's legal work harmed Plaintiffs, either because it fell below the standard of care (Count 1), it breached a fiduciary duty (Count 2), or it abused a confidential or fiduciary relationship (Count 3).  Since Plaintiffs allege that they were harmed by a fraud, and that the Firm's work "enabled" that fraud (*see* Compl. ¶¶ 4, 40, 45, 57, 65), their claims must be pled with particularity.  Fed. R. Civ. P. 9(b).

Because Plaintiffs were not the Firm's clients, they make only generalized allegations about its legal work for Goliath.  They do not detail the "structure" the Firm allegedly created, and the joint venture agreements are described only in general terms.  There are no specifics about who performed the legal work or when.  The Complaint has no details at all about the "advice" or

"opinions" except legal conclusions about their effect based on "information and belief."  Compl.

¶¶ 12, 26, 34, 39.  If the legal work included "representations" to Plaintiffs, the Complaint lacks

particularity about what these representations were, who made them, when they were made, to

whom they were made, where they were made, or even whether any Plaintiff actually saw them.

The key piece of work product that is central to Plaintiffs' claims – the alleged "opinion

letter" – is not attached or quoted in the Complaint.  Nor is it described with any particularity, as

the allegations about the opinion letter are pled almost entirely on "information and belief" with

no specifics.  *See id.* ¶ 5 ("*upon information and belief*, drafted a key legal Opinion Letter . . .")

(emphasis added); *id.* ¶ 26 ("*Upon information and belief*, Alston & Bird agreed to prepare an

Opinion Letter addressing whether the proposed 'liquidity pool' structure constituted a security.")

(emphasis added).  Thus, there are no allegations establishing: (a) *when* the opinion letter was

issued; (b) *to whom* it was addressed; (c) *if* and *how* it was actually circulated to investors; (d) *what*

specific legal analysis it contained; (e) *who* among the Plaintiffs saw or received it; and (f) *how*

Plaintiffs actually relied on it.  *See USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-

80352-BLOOM/Valle, 2016 WL 4254257, at *4 (S.D. Fla. Feb. 16, 2016) (dismissing fraud claims

pled based "upon information and belief" as insufficient under Rule 9(b)); *see also Ahmed*, 809 F.

Supp. at 1106 (holding that just because an opinion letter "evidently will be used by third parties

does not make them clients of the law firm").

Not even the individually named Plaintiffs can speak to the opinion letter or the joint

venture agreement.  They allege only that they "entered into a Goliath Ventures Joint Ventures

Agreement and suffered substantial financial losses as a result of the LP Scam."  Compl. ¶¶ 14–

15.  They do not allege that they ever saw, much less relied on, the opinion letter.  They do not

allege that they knew of the Firm's involvement at the time of investment or reviewed any of its

work product.  Indeed, the Complaint hardly even attempts to allege causation beyond boilerplate recitals of the legal element.  *See, e.g.*, *id.* ¶ 121.  Plaintiffs' boilerplate language is unsupported by any facts showing that the *Firm* proximately caused their injuries, rather than Goliath.  Additionally, because the class definition encompasses *all* Goliath investors from 2023 – including those who signed up before the Firm was retained in 2025 (Compl. ¶ 49) – there is no way to discern what the Firm said or did to induce reliance from all Plaintiffs.  *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) ("A bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b).").

The same problem manifests in the Complaint's allegations of purported omissions.  It alleges that the Firm "omitted material facts concerning the risks and structural deficiencies inherent in the enterprise."  Compl. ¶ 131.  But it does not specify what about the enterprise's structure made it an "offer and sale of securities" or what provisions caused "the absence of meaningful managerial control" or what "legal and regulatory risks" were present, or what the "structural weaknesses" entailed, or when and how the Firm "allow[ed] its legal work to be used to assure investors of the enterprise's legitimacy."  *Id.* ¶ 132.  Nothing in the Complaint explains with particularity how this work "enabled" Goliath's fraud.  Indeed, since the Complaint does not allege that the Firm communicated with Plaintiffs at all, it fails to plead the specifics of this supposed legal work or how it got from the Firm to Goliath to Plaintiffs.  That requires dismissal.  *See Brexendorf*, 319 F. Supp. 3d at 1266 ("Absent specific facts about when the alleged omissions were made and by whom, the [claims] fall short of the particularity required by Rule 9(b).").

**CONCLUSION**

For these reasons, Defendant Alston & Bird LLP asks the Court to dismiss the Complaint in its entirety with prejudice for failure to state a claim.

Dated: April 22, 2026

Respectfully submitted,

**WHITE & CASE LLP**

_/s/ James N. Robinson_
James N. Robinson
Florida Bar No. 608858
Zachary B. Dickens
Florida Bar No. 98935
W. Dylan Fay
Florida Bar No. 125673

Southeast Financial Center
200 South Biscayne Blvd. Ste. 4900
Miami, FL 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: jrobinson@whitecase.com
Email: zdickens@whitecase.com
Email: wfay@whitecase.com

_Counsel for Defendant Alston & Bird LLP_

AMERICAS 133195986

18